John SHEPLER, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 180S2.

Supreme Court of Indiana.

Nov. 7, 1980.

John P. Avery, Indianapolis, for appellant.

Theodore L. Sendak, Atty. Gen., Carmen L. Quintana, Deputy Atty. Gen., Indianapolis, for appellee.

PRENTICE, Justice.

Defendant (Appellant) was charged by information with, Count I, auto theft, Ind. Code § 35–43–4–2 (Burns 1979); Count II, attempted murder, Ind.Code § 35–41–5–1; § 35–42–1–1 (Burns 1979); Count III, battery, Ind.Code § 35–42–2–1 (Burns 1979); Count IV, resisting a law enforcement officer, Ind.Code § 35–44–3–3 (Burns 1979); Count V, theft, Ind.Code § 35–43–4–2 (Burns 1979); and Count VI, habitual offender, Ind.Code § 35–50–2–8 (Burns 1979). After trial by jury, he was convicted upon Counts I, IV and VI.[1] The trial court sentenced the defendant to six (6) months imprisonment on Count I; three (3) years imprisonment on Count IV, sentences to run concurrently; and to thirty (30) years imprisonment on Count VI. This direct appeal presents the following issues:

(1) Whether or not the trial court erred in admitting the defendant's confession.

(2) Whether or not the trial court erred in continuing the trial in the defendant's absence.

(3) Whether or not the trial court conducted a proper voir dire examination of the jury regarding their possible exposure to newspaper publicity.

(4) Whether or not the evidence is sufficient to support the verdict of guilty of resisting a law enforcement officer.

---

1. On the State's motion Count II and Count III were dismissed.

(5) Whether or not the trial court improperly admitted evidence of flight during the State's presentation of rebuttal evidence.

(6) Whether or not the trial court erred in refusing to give the defendant's tendered instruction number nine which would have informed the jury that they should acquit upon the battery charge if they found that the battery was provoked.

(7) Whether or not the trial court erred in giving an instruction on *flight*.

(8) Whether the bifurcated procedure provided for by the habitual offenders statute is constitutional, and whether the statute is unconstitutional as subjecting an accused to double jeopardy.

(9) Whether or not the prosecutor, in summation, improperly commented upon Defendant's failure to testify.

(10) Whether or not the record fails to show that the gun the defendant carried was loaded.

(11) Whether or not the trial court erred in failing to give the defendant's tendered instruction on recklessness, as a lessor included offense.

(12) Whether or not the trial court erred in refusing to provide funds for an investigation or alternatively to release the defendant to enable him to make an investigation, to determine whether one of the jurors had been biased against him.

## ISSUE I

Over timely objection and a pre–trial suppression motion, the trial court admitted a redacted transcript of a tape recorded statement which the defendant had given to the police within eight (8) hours after his arrest. The statement, in pertinent part, consists of a confession to the charge of auto theft and resisting a law enforcement officer. The defendant contends that the confession was not knowingly and voluntarily rendered.

It is the State's burden to prove, beyond a reasonable doubt, that the defendant voluntarily and intelligently waived his rights, and that the defendant's confession

was voluntarily given. *Grey v. State*, (1980) Ind., 404 N.E.2d 1348, 1351; *Magley v. State*, (1975) 263 Ind. 618, 626–27, 335 N.E.2d 811, 817. In considering whether such burden was satisfied, we look at the totality of the circumstances, to determine whether there had been any inducement, such as violence, threats, promises, or other improper influence. *Grey v. State, supra; Nacoff v. State*, (1971) 256 Ind. 97, 101, 267 N.E.2d 165, 167. However, in reviewing the trial court's ruling upon the issue, when the evidence is in conflict, we will consider only that evidence which supports the ruling, and the unrefuted evidence in the defendant's favor. *Feller v. State*, (1976) 264 Ind. 541, 545, 348 N.E.2d 8, 12–13.

The defendant was arrested on the day of his wife's funeral. The arrest was effected at the funeral home by three police officers acting pursuant to a warrant. At the hearing had on the motion to suppress the confession, the defendant testified that Officer Crisler had told him, by telephone on the previous night, that no arrest would take place until after the services at the cemetery had been concluded, and that Officer Crisler later promised him a ride to the cemetery, if he cooperated.

Another arresting officer, Officer Paschall was alleged to have said that the defendant should not try to get up and run out of the interrogation room, or the officer would get him before he got to the door.

The defendant was interrogated from approximately 11:30 a. m. until 6:30 or 7:00 p. m., without having food or drink. He was told that a lawyer, whom he had used in the past, had been contacted and was not interested in defending him. The officers also asked a number of questions concerning the defendant's relationship with his wife and the details of her recent death, but these questions and answers were not included in the redacted version admitted at trial.

The defendant further testified that several of his answers appearing in the statement were untrue, that he had taken four tuinal tablets during the morning of the funeral and that the drugs had depressed him even further and that he had smoked

marijuana that morning as well and could not think clearly at the time the statement was given.

Defendant claimed that he had signed a waiver of his rights without reading it. However, he acknowledged that he was aware of his right to counsel and knew that he did not have to give a statement if he did not want to. He also acknowledged that he knew that he could stop the questioning at any time. He made no request for food, permission to urinate or for the assistance of a lawyer. In general, he was not in physical discomfort.

Defendant also testified that he made his statement in order to obtain a ride to the cemetery and that he assumed that, if his former attorney did not want his case, neither would any other.

Marilyn Walker confirmed the defendant's ingestion of four "blue tips" (tuinal) and his generally depressed mood on the day of the funeral.

Detective Crisler testified for the State and stated that the defendant did not appear depressed and did not slur his words. He also testified that he made no promises to the defendant, although the defendant had mentioned the possibility of his going to the cemetery. He admitted that he had told Defendant's sister that he could go to the cemetery.

Detective Paschall testified that while at the funeral home, he advised the defendant of his rights and while at the police station, he told the defendant that if he tried to run, he would not get very far. He also testified that during the interrogation, the defendant asked if he could go to the graveyard, but that he did not indicate that the giving of his statement was contingent upon obtaining permission. During the interrogation, the defendant was calm and in control of himself.

Paschall acknowledged that he had told the defendant that he could go to the burial grounds, if he signed the statement and cooperated.

■ Upon the foregoing, we find there was ample evidence to sustain the trial court's denial of Defendant's suppression motion. *North Carolina v. Butler*, (1979) 441 U.S. 369, 99 S.Ct. 1755, 60 L.Ed.2d 286; *Jackson v. State*, (1980) Ind., (No. 879 S 241); *Grey v. State*, (1980) Ind., 404 N.E.2d 1348, 1352; *Brown v. State*, (1979) Ind., 390 N.E.2d 1000, 1003; *Franklin v. State*, (1977) 266 Ind. 540, 546, 364 N.E.2d 1019, 1022; *Ortiz v. State*, (1976) 265 Ind. 549, 553–54, 356 N.E.2d 1188, 1191; *Montes v. State*, (1975) 263 Ind. 390, 399, 332 N.E.2d 786, 793.

### ISSUE II

On the second day of trial and during the State's presentation of its evidence, the defendant failed to reappear, following the lunch recess. Following a delay of one hour and fifteen minutes, during which time the defendant neither appeared nor contacted the court, the trial was resumed. The defendant did not appear on the following day, and the trial continued and was concluded in his absence.

■ The defendant contends that the resumption of trial, in his absence, violated his rights under the Sixth Amendment of the United States Constitution and Article I, Section 13 of the Indiana Constitution.[2] He has offered no explanation for his absence either by way of his motion to correct errors or by way of his briefs to this Court. He was aware of his obligation to return after the lunch recess, and on this record, we hold that he waived his right to be present for the remainder of his trial. *Taylor v. United States*, (1973) 414 U.S. 17, 94 S.Ct. 194, 38 L.Ed.2d 174 (per curiam); *McHenry v. State*, (1980) Ind.App., 401 N.E.2d 745, 747–48; *Taylor v. State*, (1978) Ind.App., 383 N.E.2d 1068, 1070–71.

### ISSUE III

■ Defendant charges that the court failed to conduct a proper voir dire of the

**2.** Defendant also contends Ind. Code 35–1–28–1 (Burns 1977) is applicable; however, the statute was repealed before his trial began on March 26, 1979. 1978 Ind. Acts, Pub. L. No. 2, § 3555, effective March 9, 1978.

jury following a suggestion, during trial, that the jury may have been improperly subjected to some prejudicial publication concerning the case. He complains that the court's voir dire of the panel was insufficient, apparently because it did not take the jurors, one–by–one, and interrogate each one privately concerning the degree of exposure and possibility of resulting taint, as prescribed by our opinion in *Lindsey v. State*, (1973) 260 Ind. 351, 295 N.E.2d 819. The record, however, reflects that the prescribed procedure was followed and that the preliminary interrogation of the panel in banc revealed that no juror had read the news article in question. Consequently, there was no need for progressing to the second stage of the *Lindsey* procedure, i. e., individual interrogation.

█ The trial court permitted defense counsel to conduct a voir dire of the jury in this connection; and a further complaint is that such interrogation was unduly restricted. However, the record discloses that the restriction occurred to prevent a juror from revealing to the other jurors, if he had known, the content of the questionable publication. This is precisely the purpose of the two–tier voir dire procedure prescribed by *Lindsey, supra*, and the court committed no error.

We note the trial court was satisfied that no exposure had occurred. *Sceifers v. State*, (1978) 267 Ind. 687, 692, 373 N.E.2d 131, 134, *cert. denied*, (1978) 439 U.S. 873, 99 S.Ct. 209, 58 L.Ed.2d 187. Defense counsel's voir dire interrogation did not unearth any basis for believing that any juror had, in fact, seen the article. *Worthington v. State*, (1980) Ind., 405 N.E.2d 913, 916. We find defendant's contention to be without merit.

### ISSUE IV

█ The defendant challenges the sufficiency of the evidence to support the conviction upon the *resisting* charge. He urges that had he been present, he would have testified that he did not resist arrest with a firearm. In this connection, he urges that we consider his testimony given at the suppression hearing, which we cannot do.

The evidence favorable to the State, and the inferences to be drawn therefrom, adequately support the conclusion that the defendant had been arrested pursuant to a warrant. He had been contacted the night before his wife's funeral by the police and had been told that they would meet him at the funeral home. At the home, three officers were present. While the defendant stood next to his wife's casket, one officer placed his hand on the defendant's arm. At that point the defendant reached for a loaded gun, which had the safety catch on. The gun was pointed at another officer's stomach and touched it. A scuffle ensued, and the defendant was arrested.

The three officers testified at the trial and related the above events. The only discrepancy we find in the record relates to the reason why one of the arresting officers touched the defendant.

Detective Crisler testified that he touched the defendant to calm him, as the defendant was upset because a ring which had been given to the funeral director was not on his wife's finger.

Deputy Taylor testified that either Crisler or Paschall put a hand on the defendant's arm to take him downtown. This occurred after Crisler had asked him for the third time to leave. The defendant became upset, and then the struggle occurred.

Detective Paschall testified that Crisler put his hand on the defendant's arm and said, "Come on John, let's go." Then he saw the defendant's hand go down. The defendant spun around, and Detective Paschall saw a gun pressing into his stomach.

It is Defendant's position that the only inference that can be drawn from such evidence is that the police "grabbed first and tried to justify later."

"On appeal, we do not reweigh the evidence or the credibility of witnesses. If the evidence supportive of the verdict, and reasonable inferences to be drawn therefrom, would permit a reasonable trier of fact to infer the existence of each element of the crime beyond a reasonable

doubt, the verdict will not be disturbed." *Dozier v. State*, (1976) 264 Ind. 329, 330–31, 343 N.E.2d 783, 784.

■ We find that the record contains sufficient evidence to support the verdict.

### ISSUE V

The defendant next contends that the evidence which the State offered in rebuttal was, in fact, part of its case in chief. He makes vague charges that, coming when it did, he did not have an adequate opportunity to meet it.

The rebuttal evidence was testimony relating to the efforts of the police to locate Shepler, after he failed to return on the second day of the trial. One Lawrence Sells testified that, shortly after the lunch recess was called, the defendant drove away from the courthouse.

At trial, defense counsel asserted that that testimony was highly prejudicial and, if admitted, would deny the defendant due process of law. On appeal, and in his motion to correct errors, the defendant for the first time contends that the evidence was not proper rebuttal and that he should have had an opportunity for discovery upon the matter. He claims that these witnesses were a surprise to the defense.

■ The series of events which produced the alleged surprise witnesses was occasioned by the defendant's unauthorized and unexplained absence from the trial.

"* * * Defendant may not state one reason for an objection at trial and then rely upon another on appeal. The latter reason is deemed waived, as it was not properly brought to the trial court's attention."

*Phelan v. State*, (1980) Ind., 406 N.E.2d 237, 239. *Accord, Smith v. State*, (1979) Ind., 397 N.E.2d 959, 963.

### ISSUE VI

The defendant next charges that the trial court erred in refusing to give his tendered instruction on *Provocation*, as a defense. He asserts that, under the evidence, the defense was available upon the battery charge and, hence, that he was entitled to have the instruction read. However, the battery charge had been dismissed prior to trial.

### ISSUE VII

■ The defendant contends the trial court erred in giving an instruction on flight. However, he did not object at trial, to the giving of such instruction. The record discloses that each side had ample opportunity to object to the proposed instructions.

Ind.R.Crim.P. 8(B) provides:

"The court shall indicate on all instructions, in advance of the argument, those that are to be given and those refused. After the court has indicated the instructions to be given, each party shall have a reasonable opportunity to examine such instructions and to state his specific objections to each, out of the presence of the jury and before argument, or specific written objections to each instruction may be submitted to the court before argument. *No error with respect to the giving of instructions shall be available as a cause for new trial or on appeal, except upon the specific objections made as above required.*" (Emphasis added.)

The issue is not available for appeal. *See Williams v. State*, (1979) Ind., 393 N.E.2d 183, 187.

### ISSUE VIII

The defendant launches a wholesale attack upon the constitutionality of Ind.Code § 35–50–2–8 (Burns 1979), the habitual offender statute.

*A.*

■ He contends that the statute prescribes a "two trial" process, that the second trial requires but does not receive, all the necessary constitutional protections and was, therefore, constitutionally infirm.

In the case at bar the trial court followed the guidelines of *Lawrence v. State*, (1972) 259 Ind. 306, 313–15, 286 N.E.2d 830, 834–

36. The habitual offender statute was drafted in response to *Lawrence*.

The purpose of the bifurcated proceeding is to prevent the jury from being tainted by knowledge of the defendant's prior felony convictions, in determining his guilt or innocence of the charge before them. The record shows that this defendant was afforded that protection. We find no error.

**B.**

■ The defendant next contends that a habitual offender conviction is barred by double jeopardy proscriptions. Ind.Code § 35–41–4–3 (Burns 1979). *See* Ind.Const., Art. 1, § 14. There is no merit to this contention. *Hanks v. State*, (1948) 225 Ind. 593, 596, 76 N.E.2d 702, 703. See *Norris v. State*, (1979) Ind., 394 N.E.2d 144, 147; *Howard v. State*, (1978) 268 Ind. 589, 591, 377 N.E.2d 628, 629, *cert. denied*, (1978) 439 U.S. 1049, 99 S.Ct. 727, 58 L.Ed.2d 708.

**C. & D.**

The defendant contends that the habitual offender statute violates Article I, Sections 16 and 18 of the Indiana Constitution, but he cites no authority to support this assertion. Ind.R.App.P. 8.3(A)(7).

■ His charge that the statute violates the Eighth Amendment of the United States Constitution has been settled by the decision in *Rummel v. Estelle*, (1980) 445 U.S. 263, 100 S.Ct. 1133, 63 L.Ed.2d 382.

**E.**

■ The defendant next asserts that our procedure deprives the accused of the right to have the habitual offender issue determined by an impartial jury, in that the jury will have been prejudiced by its prior determination of guilt upon the underlying felony charge. He acknowledges that he can find no authority to support his position, and we are of the opinion that it is not tenable.

"As to his contention that a separate jury should have been ordered to hear the habitual criminal charge, it is without merit. The trial court complied in all respects with the bifurcated trial requirements of *Lawrence v. State*, (1972) 259 Ind. 306, 286 N.E.2d 830. The jury heard direct evidence of the appellant's prior crimes in the habitual criminal proceeding and was bound to adjudicate him solely on the basis of that evidence. We fail to see how any undue prejudice could have arisen in the habitual criminal trial from the use of evidence of prior crimes to impeach appellant at the principal trial." *Jameison v. State*, (1978) 268 Ind. 599, 603, 377 N.E.2d 404, 406–07.

In this case the defendant did not testify at trial.

**ISSUE IX**

■ The defendant next contends that the prosecutor, in closing argument, improperly commented upon his failure to testify. The comments complained of occurred during the closing argument on the habitual offender charge. Our examination of the record discloses that the comments complained of pertain to Defendant's absence, not to his failure to testify. Additionally, defense counsel made no objections to these comments at the time they were made. He has, therefore, waived any alleged error. *See Pavone v. State*, (1980) Ind., 402 N.E.2d 976, 980–81.

**ISSUE X**

The defendant next contends that the gun involved in the incident was unloaded and, therefore, could not be a "deadly weapon" within the purview of Ind.Code § 35–44–3–3 (Burns Supp.1979). The record, however, shows that the gun a .22 caliber Ruger automatic pistol, contained nine loads of .22 long rifle Super X ammunition when it was retrieved immediately after the defendant's arrest.

**ISSUE XI**

■ Defendant's next assignment is that the trial court erred in refusing to give his tendered instruction on *Recklessness*, as an included offense, Ind.Code § 35–42–2–2 (Burns 1979), but the trial court's instruc-

tion number 20 covered the substance of the tendered instruction.

"It is a well settled rule that an instruction may be properly refused if the subject matter is covered in other instructions given by the court."

*Spaulding v. State,* (1978) 268 Ind. 23, 26, 373 N.E.2d 165, 167.

### ISSUE XII

 Defendant, by his brief, alleges and complains that the court would neither provide funds to hire an investigator nor release him, to enable him to investigate his suspicions that one of the jurors was biased. His motion to correct errors contains no allegation of juror bias nor any supporting affidavits. Ind.R.Crim.P. 16; Ind.R.Tr.P. 59(G)(1). The record reveals no motion, addressed to the trial court, regarding this claim. The propriety, if any, of a court sponsored post–trial investigation could only be determined under rules pertaining to newly discovered evidence. Ind.R.P.C. 1(a)(4).

We find no error. The judgment of the trial court is affirmed.

GIVAN, C. J., and DeBRULER, HUNTER and PIVARNIK, JJ., concur.