**Randy E. BENTON, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 49A04–9701–CR–29.

Court of Appeals of Indiana.

Feb. 5, 1998.

Michael R. Fisher, Indianapolis, for Appellant–Defendant.

Jeffrey A. Modisett, Attorney General, Randi F. Elfenbaum, Deputy Attorney General, Indianapolis, for Appellee–Plaintiff.

## OPINION

DARDEN, Judge.

### STATEMENT OF THE CASE

Randy E. Benton appeals his convictions by jury of robbery as a class B felony and burglary as a class A felony and his sentence thereon. We affirm.

### ISSUES

1. Whether evidence was erroneously admitted.

2. Whether sufficient evidence supports the convictions.

3. Whether Benton was erroneously sentenced.

### FACTS

Randy Benton lived with his girlfriend Lisa White in her apartment on the near-east side of Indianapolis. At about 10:00 p.m. on the night of October 20, 1995, Benton left the apartment driving White's brown Chevrolet sedan. Sue Nevins lived in a mobile home near the intersection of East 52nd Street and

Mitthoeffer Road. She let her dogs out into the yard about 11:00 that night, and as she exited the mobile home she heard a car door. When the dogs started barking, she went into the backyard and from there saw a car parked in the grass on her side of 52nd Street. She saw two men walking away from the car toward Mitthoeffer. Thinking this "didn't look right," (R. 173), she went back inside and informed her fiancé, Phillip Scott, about the car. Scott, a mechanic for 16 years, went out and saw that the car "didn't appear to have any mechanical defects," and "wasn't overheating and it didn't have any flats"; yet it was parked "in a very dark, unfit spot." (R. 216–17, 217). Scott called the police. Officer Cathy Troutt of the Lawrence Police Department responded to the call at about 11:30 p.m. She found no one in the area around the vehicle. When she checked BMV records on the 1984 brown Chevrolet, she learned the car had not been reported stolen and was registered to Lisa White.

On the other side of Mitthoeffer from Nevins and Scott, William Crow, age 75, was alone in his double-wide trailer which angled across its lot facing away from the corner of 52nd and Mitthoeffer. Crow had gone to bed a little after 10:00 p.m. and gone to sleep. He was awakened around 11:30 by a noise and sat up on the side of his bed. Two men with guns came into his bedroom. They wore stocking masks and dark clothing, and there were no lights on. They demanded Crow's billfold. When Crow said he had no billfold, one of the men told him that he knew Crow did. One of the men grabbed Crow's arm, swung him around, and threw him on the floor, breaking his arm. They then taped Crow to an armchair[1] and covered his mouth with tape. The two men took Crow's flashlight and rummaged through his home. After Crow heard the men leave, he managed to extricate himself from the tape and called the police. Stereo equipment, two phones, cans containing several hundred dollars in coins, and several wristwatches were missing.

Officer Trout responded to the call at 12:58 a.m. When she arrived, she found Crow visibly shaken, upset, and in pain, and the residence "very torn up." (R. 333). The home's rear door bore pry marks, appearing to have been forced open. The brown Chevrolet was no longer parked alongside 52nd Street.

Detective Greg Swingle was assigned the investigation. He went to Lisa White's residence. The brown Chevrolet was parked in front, and he found a tire tool under its front seat. White answered her door and let the detective in. Benton was also present. Swingle told them the car had been seen parked at 52nd and Mitthoeffer, and a robbery nearby on that evening was being investigated. Swingle obtained permission to search the residence. Two watches were found on a shelf inside the living room closet, and they matched Crow's descriptions of two watches stolen from him. Crow later identified the watches as his property, stolen from him during the robbery.

Crow had told the detective about an incident in August of 1995, when he had been mowing his yard and a man in a brown car stopped and asked him whether he needed any help. Crow said he did not, but he noticed the man "kept hanging around." (R. 278). After the man finally left in his car, Crow went back into his residence and found his billfold lying on the floor, emptied of its cash. When the detective presented a photo array about two weeks after the robbery, a "shaking" and "upset" Crow picked out Benton as the man who had come to his house in August. (R. 405). Crow also identified White's Chevrolet as "look[ing] like the same car" Benton was driving that day. (R. 283).

A jury convicted Benton of robbery as a class B felony and burglary as a class A felony. After finding several aggravating factors, the trial court sentenced Benton to serve fifty years for the burglary conviction and twenty years for the robbery conviction. The trial court ordered the sentences to be served consecutively.

---

1. After being thrown, Crow asked to be allowed to sit in his chair, "[c]ause underneath the cushion of the chair my billfold was in—was there. And I figured, well, if I was sitting on it they wouldn't be looking there for it." (R. 244).

## DECISION

### 1. Admission of Evidence

Benton claims that Crow's testimony about Benton's being at his residence in August was improperly admitted over his objection that the evidence contravened Ind.Evidence Rule 404(b), which provides as follows:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes such as proof of motive, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, . . . .

Benton argues that Crow's testimony had very little value in proving that Benton was one of his assailants because he "could only say that the person who came into his yard in August was 'about the same size'" as Benton. Benton's Brief at 14. Because admissible evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, *see Hardin v. State,* 611 N.E.2d 123, 127 (Ind.1993) (citing Ind.Evidence Rule 403), his argument continues, the trial court erred in not excluding evidence which suggested that Benton "had done something to the victim before, so he probably did it again." Benton's Brief at 14.

■ Benton filed a motion in limine to exclude evidence about the August incident. In its pretrial argument against the motion, the State contended that Crow's testimony together with that of another witness (indicating Benton had discussed breaking into Crow's home and robbing him) was admissible to show his identity as one of Crow's assailants, his knowledge of the victim and the premises, and his preparation and plan for the crime. Benton discusses only the identity exception in his appellate brief. Because Benton had filed a notice of alibi stating he had driven White's car to a friend's home on the evening of October 20th and stayed there until returning to White's apartment, his identity was clearly at issue.

■ The trial court has broad discretion to determine the admissibility of evidence, and we will not reverse the trial court's ruling on the admissibility of evidence absent an abuse of discretion. *Willoughby v. State,* 660 N.E.2d 570, 580–81 (Ind.1996). If evidence about prior bad acts "is offered *only* to produce the 'forbidden inference'—that the defendant acted badly in the past, and that the defendant's present, charged actions conform with those past bad acts—then the evidence is inadmissible." *Hardin,* 611 N.E.2d at 129 (emphasis added). As indicated in the colloquy with the trial court, the State offered Crow's testimony to combine with specific other evidence [2] for several "permissible purposes." *Id.* A trial court decision regarding whether certain evidence violates Evid.R. 403 is given a great deal of deference on appeal and is reviewed only for an abuse of discretion. *Tompkins v. State,* 669 N.E.2d 394, 398 (Ind.1996). Benton's bald assertion that the probative value of Crow's testimony was outweighed by its prejudicial effect is insufficient to convince us that the trial court abused its discretion.

### 2. Sufficiency of the Evidence

■ When presented with a challenge to the sufficiency of the evidence, we neither judge questions of credibility nor weigh evidence. *Elmore v. State,* 657 N.E.2d 1216, 1219 (Ind.1995). We look only to the evidence and reasonable inferences therefrom which support the verdict. *Id.* If, from that perspective, there was evidence of probative value from which a reasonable trier of fact could conclude that the defendant was guilty beyond a reasonable doubt, we will affirm the conviction. *Id.*

Benton claims the State "failed to produce substantial evidence of probative value on the issue of identification"; specifically that although there is

> evidence that the automobile in [Benton]'s control was near the scene of the crime [and] . . . connecting [Benton] to property of the victim as well as evidence that [Benton] had lived near the victim and may have even cased the house eight months prior to the alleged crime, . . . there is no

**2.** Benton does not contest that this other evidence was presented by the State.

evidence that [Benton] was one of the two individuals who went into the house on October 20, 1995.

Benton's Brief at 16, 17.

In *Whitt v. State*, 499 N.E.2d 748, 750 (Ind.1986), our supreme court discussed a challenge to the sufficiency of identification evidence and said that when evidence "only inconclusively connects a defendant with the crime, the weight to be given that identification evidence" was a determination for the jury, and the ultimate "identity of an accused is a question of fact." Crow's testimony that Benton had previously been to his residence and thereafter cash was missing from his billfold, and the other evidence cited by Benton was sufficient to support the reasonable inference that Benton was the perpetrator and, as such, allow the jury to conclude that he was guilty of robbery and burglary.

### 3. *Sentencing*

#### a. *Double Jeopardy*

Benton claims double jeopardy prohibits his being sentenced "for both Burglary as an A felony and Robbery as a B felony, where the same bodily injuries are used to establish the aggravating circumstance which elevates each of the offenses to a higher class of felony." Benton's Brief at 8. Specifically, he cites the language in the two informations describing the same bodily injuries to Crow.

With respect to the double jeopardy prohibition under the United States Constitution, in *Games v. State*, 684 N.E.2d 466 (Ind.1997), our supreme court held that the analysis should focus solely upon the statutory elements of the offenses in question. When the analysis is applied to a single criminal proceeding, double jeopardy's purpose is "to ensure that a court imposes no more punishment on a defendant than the legislature intended." *Id.* at 474. Therefore, we look at the statutory definition of the respective crimes to determine whether the legislature "intended to impose separate punishments for multiple offenses arising in the course of a single" incident. *Id.* If the statutory definition of one crime requires proof of an additional fact which the other

crime does not, there is no double jeopardy violation. *Id.*

Robbery, as a class B felony, requires that a person take property from another person or from the presence of another person, either while armed with a deadly weapon or resulting in bodily injury. Ind.Code § 35–42–5–1. Burglary, as a class A felony, requires that a person break and enter the dwelling of another with the intent to commit a felony and bodily injury results. Ind.Code § 35–43–2–1. Robbery requires proof of a taking of property, and burglary does not. Burglary requires proof that a dwelling was broken and entered with intent to commit a felony, and robbery does not. Therefore, the trial court did not violate Benton's federal double jeopardy rights in sentencing him for both robbery and burglary.

As to his double jeopardy rights under the Indiana Constitution, Benton does no more than cite to Article 1, Section 14. Without a "separate analysis of the state double jeopardy claim" or argument as to "why it provides protection different than the federal constitution," we may not reverse on that issue. *Valentin v. State*, 49S01–9711–PC–628, slip op. at 3, 4 (Ind. December 4, 1997).

#### b. *Consecutive Terms*

Benton's next sentencing error argument cites Ind.Code § 35–50–1–2, the statutory provision allowing the trial court to sentence those convicted of "crimes of violence" to consecutive terms. Both robbery as a B felony and burglary as an A felony are included in its definition of "crimes of violence." *Id.* According to Benton, because double jeopardy requires we vacate his robbery as a B felony and order it entered as a C felony, consecutive sentences would then be inappropriate under the statute. Failure on his double jeopardy claim renders this argument moot.

#### c. *Manifestly Unreasonable and Disproportionate*

Benton's final claim of sentencing error is that his seventy year sentence is

manifestly unreasonable and disproportionate to the nature of the offenses committed.

As Benton notes, the trial court mentioned two mitigating circumstances, that he had worked in 1994 and 1995 and that he had had an abusive family background. However, the trial court then found the aggravating circumstances to clearly outweigh these factors. The court first mentioned Benton's "substantial prior criminal history," (R. 515), and recited a list of crimes from the presentence investigation report of six felony and eight misdemeanor convictions. The court further noted that Benton was on probation when these offenses were committed, and that the victim who was elderly and appeared "physically infirmed" had been "rather viciously injured needlessly, during the course of this criminal activity." (R. 516).

The legislature has fixed the sentence for a class B felony as ten years, with a possible ten years added for aggravating circumstances. Benton was sentenced to twenty years on his class B felony robbery conviction. The legislature has fixed the sentence for a class A felony as thirty years, with an additional twenty years possible for aggravating circumstances. Ind.Code § 35–50–2–4. Benton was sentenced to fifty years for the class A burglary.

 The legislature has mandated that the trial court consider the nature and circumstances of the crime in determining what sentence to impose for the crime. Ind. Code § 35–38–1–7.1(a). Although a material element of the crime may not also constitute an aggravating circumstance for enhanced sentence, the particularized circumstances of the crime may support a sentence enhancement. *Smith v. State,* 675 N.E.2d 693, 698 (Ind.1996). The criminal element was Crow's injury; the court's reference to the viciousness with which the injury was inflicted particularizes that circumstance for use as an aggravating factor. Further, the trial court may consider the violation of conditions of probation as an aggravating circumstance. I.C. § 35–38–1–7.1(b)(1). The condition that a probationer not commit an additional crime "is automatically a condition of probation by operation of law." *Atkins v. State,* 546 N.E.2d 863, 865 (Ind.Ct.App.1989). The trial

court also may consider a person's history of criminal activity as an aggravating circumstance. I.C. § 35–38–1–7.1(b)(2). Benton's repeated commission of criminal acts over a fifteen year period shows a complete disregard for the law, as well as for the property of others. Finally, the trial court may consider that the victim was at least sixty-five years of age or was physically infirm as aggravating circumstances. I.C. § 35–38–1–7.1(b)(6). Thus, the trial court specified five valid aggravating factors.

 Sentencing is within the sound discretion of the trial court, and we review sentencing only for abuse of discretion. *Smith,* 675 N.E.2d at 697. The trial court's discretion includes the ability to determine whether the presumptive sentence for a crime will be increased or decreased because of aggravating or mitigating circumstances. *Id.* A single aggravating circumstance sufficiently supports enhancement of a presumptive sentence. *Id.* An enhanced sentence can be imposed when the only aggravating circumstance is a prior criminal history. *Duvall v. State,* 540 N.E.2d 34, 36 (Ind.1989). As discussed in the previous section, consecutive sentences are authorized for two instant violent crimes committed by Benton. Further, the trial court may rely on the same aggravating factors to enhance a defendant's sentence and to order it served consecutively. *Isaacs v. State,* 673 N.E.2d 757, 765 (Ind. 1996). We find no abuse of discretion here.

We affirm.

HOFFMAN, J., concurs.

GARRARD, J., concurs with separate opinion.

GARRARD, Judge, concurring.

I concur with the majority, but I believe a few words of amplification may be helpful concerning the double jeopardy issue.

It seems to me that what was almost a distinct branch of double jeopardy analysis was begun by our supreme court in *Bevill v. State,* 472 N.E.2d 1247 (Ind.1985). There the court determined that double jeopardy considerations precluded using the same in-

juries to convict for attempted murder and to enhance the felony class of a separate crime, burglary. In *Flowers v. State,* 481 N.E.2d 100 (Ind.1985) the same reasoning was used to preclude elevating the class of separate felonies (burglary, attempted rape and attempted robbery) based upon the injury of a single victim. *See also McDonald v. State,* 542 N.E.2d 552 (Ind.1989); *Reaves v. State,* 586 N.E.2d 847 (Ind.1992) and *Campbell v. State,* 622 N.E.2d 495 (Ind.1993).

I agree with the majority that federal double jeopardy analysis does not preclude elevating the class of separate felonies because only one person was injured and that this was the view adopted by our supreme court in *Games v. State,* 684 N.E.2d 466 (Ind.1997) and its progeny. We should, however, expressly note that the *Bevill* line of cases has been overruled.