Stevan TOMPKINS, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 55S00–9503–CR–353.

Supreme Court of Indiana.

July 19, 1996.

David A. Collins, Bloomington, for Appellant.

Pamela Carter, Attorney General, Christopher L. Lafuse, Deputy Attorney General, Indianapolis, for Appellee.

SULLIVAN, Justice.

Defendant Stevan Tompkins was charged with Murder,[1] Conspiracy to Commit Murder,[2] Felony Murder,[3] Robbery with a Deadly Weapon,[4] and Conspiracy to Commit Robbery with a Deadly Weapon.[5] Defendant was also charged with being an Habitual Offender.[6] After a jury trial on October 14, 1994, defendant was found guilty of Murder and Robbery with a Deadly Weapon. At a separate hearing on October 15, defendant was also found to be an Habitual Offender. On December 19, 1994, the trial court sentenced defendant to consecutive terms of fifty years for Murder and ten years for Robbery with a Deadly Weapon. An additional thirty years was added to the Murder sentence for the Habitual Offender conviction.

### Background

Bo Berryhill, an African–American, resided on the northside of Indianapolis. On Saturday, April 30, 1994, Berryhill and his wife went to a friend's house around 5:30 p.m. where they socialized until approximately 11:30 p.m. Upon leaving their friend's house, Berryhill, though quite intoxicated, insisted on driving home. When his wife finally persuaded Berryhill to let her drive, Berryhill stepped from the car and began to walk home.

Meanwhile, on Friday, April 29, 1994, defendant, a Caucasian, had picked up his friend Robert Crist at a tavern in Indianapo-

1. Ind Code § 35–42–1–1(1993).

2. Ind Code § 35–42–5–2 (1993).

3. Ind Code § 35–42–1–1(2) (1993).

4. Ind Code § 35–42–5–1 (1993).

5. Ind Code § 35–41–5–2 (1993).

6. Ind Code § 35–50–2–8 (1993).

lis. Defendant, his wife, and Crist spent the night drinking in defendant's trailer located in Mooresville.

The next day, Saturday, April 30, at around 8:00 p.m., defendant, Crist, and defendant's wife decided to drive to Indianapolis to visit defendant's wife's uncle, who they believed would be at one of two bars on the southeast side of.Indianapolis. In the course of their trip, the group came upon Berryhill who was walking home. The group picked up Berryhill and proceeded on to the two bars, still looking for defendant's wife's uncle. The group then drove to a third bar, located near downtown Indianapolis, but were denied admission due to their excessive intoxication. Then, defendant, his wife, Berryhill, and Crist left the bar and drove to Morgan County. Berryhill asked where they were headed and Crist told him Mooresville. Berryhill protested, indicating that they should instead be going to Zionsville.

Defendant's wife drove the group back to defendant's trailer, where defendant retrieved a gun. After leaving the trailer, defendant held the gun in the front seat. Defendant's wife turned onto a lightly traveled gravel road and parked approximately 1,000 feet from the intersection. Defendant ordered Berryhill out of the car. As Berryhill got out of the car, he struggled with defendant for possession of the gun. During the struggle, Crist intervened and grabbed the gun, at which time Berryhill attempted to escape. As Berryhill reached the barbed wire fence on the other side of the ditch, Crist shot him four times. Crist then jumped back into the car and reloaded the weapon. Defendant then took the gun, walked over to Berryhill, and shot him five times in the head. Defendant returned to the car and said, "We finished, one, two, three."

The next morning, May 1, a Morgan County resident observed what he believed to be a body lying in a ditch by the side of the gravel road. Because his two-year-old daughter was with him, he decided to go to his mother's house, where he told his stepfather what

he observed. The two men investigated and found the body of Berryhill lying in the ditch.

Police called to the scene of the crime observed that Berryhill's pants' pocket was turned inside out. An autopsy revealed that Berryhill died of multiple gun shot wounds to the head. According to the coroner, Berryhill suffered five gun shot wounds to the head and four other gunshot wounds for a total of nine. Berryhill also received a cut on his right hand, consistent with the barbed wire.

## Discussion

### I

Defendant asserts that the trial court erred in admitting evidence of defendant's racial bias, because such evidence was irrelevant. The State disagrees and argues that the evidence was relevant because it tended to show defendant's motive for the murder.

Prior to the trial, the defendant filed a motion in limine seeking to exclude from evidence any mention of the phrase "no nigger lane" (which defendant used as a name for the road leading to his lake property) but the court denied it. During the trial, the state presented evidence from three witnesses of defendant's racial bias to support its theory that the murder of Berryhill was racially motivated.[7] First, defendant's accomplice Crist testified that defendant was "prejudiced" and "like[d] to mess with black people." Next, Terry Lewis, a co-worker of defendant's, testified that defendant told him that he had named a lane on his lake property "no nigger lane." Third, Mark Jones, who had been incarcerated in the county jail with defendant, testified that defendant referred to Berryhill as "nigger."

It should go without saying that we will give very close scrutiny to any allegation of wrongful injection of race in a criminal proceeding. *Holifield v. State*, 572 N.E.2d 490, 493 (Ind.1991). But where race is a relevant factor in a case, it is clear that in at least some situations evidence thereof must be admitted. See *Olden v. Kentucky*, 488 U.S. 227, 232, 109 S.Ct. 480, 483, 102 L.Ed.2d

---

7. Defendant did not object to the testimony of any of these witnesses and so no error is preserved for appeal. *Jenkins v. State*, 627 N.E.2d

789, 797 (Ind.1993), *cert. denied*, —— U.S. ——, 115 S.Ct. 64, 130 L.Ed.2d 21 (1994). Nevertheless, we elect to address the issue on the merits.

513 (1988) (defendant's constitutional right to confrontation violated when trial court excluded defendant's cross-examination evidence on grounds of its effect on jurors' racial biases).

We believe our rules of evidence provide the necessary framework for analyzing whether the admission of this testimony was proper. Under those rules, evidence which is not relevant is not admissible. Ind. Evidence Rule 402. Relevant evidence is that evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Evid. R. 401. The admission of evidence of conduct of the defendant which may bear adversely on the jury's judgment of his character is not admissible to prove the character of a person but may be admissible for other relevant purposes, such as proof of motive. Evid.R. 404(b). But even if relevant, evidence may be excluded if its probative value is substantially outweighed by (i) the danger of unfair prejudice, (ii) confusion of the issues, (iii) misleading the jury, (iv) considerations of undue delay, or (v) needless presentation of cumulative evidence. Evid. R. 403.

We first consider whether the testimony of Crist, Lewis and Jones was relevant. Evidence of racial bias on the part of the defendant has been held to be irrelevant in criminal prosecutions. *See, e.g., United States v. Kallin,* 50 F.3d 689 (9th Cir.1995) (evidence of defendant's bias against Mexicans not probative of any matter at issue in tax evasion prosecution). However, on different facts, other courts have found evidence of defendant's racial bias to be relevant. *See, e.g., Kimble v. State,* 659 N.E.2d 182, 185 (Ind.Ct. App.1995) (evidence of defendant's membership in a racially biased group and racially-charged statement held to be highly probative of his motive for participation in murder); *State v. Grayson,* 546 N.W.2d 731 (Minn.1996) (evidence of defendant's racial bias held relevant to rebut defendant's story as to why he was in victim's apartment the night she was murdered).

■ More generally, it is well settled that evidence of motive is relevant in the proof of a crime. *Halbig v. State,* 525 N.E.2d 288, 291 (Ind.1988). Further, the admission of evidence having a tendency to create an inference of motive is within the discretion of the trial court. *Id.*

■ We cannot say that Jones's testimony of defendant's use of the term "nigger" made it more probable that defendant had a motive to kill Berryhill than would evidence, standing alone, that a black defendant's pejorative reference to whites would constitute evidence of motive to commit a crime against whites. On the other hand, we believe the trial court could reasonably find Crist's statement that defendant liked to "mess" with blacks to be evidence of motive for one could hardly imagine being messed with more than Berryhill was here. We also believe the trial court could find the use of the expression "no nigger lane" demonstrated a desire to engage in violence against African–Americans at least in certain circumstances. We cannot say that the trial court abused its discretion in determining that the evidence of defendant's racial bias was relevant as creating an inference of defendant's motive for the murder.

We next must examine whether this evidence is "substantially outweighed" by any of the factors set forth in Evidence Rule 403. Defendant asserts that this evidence is substantially outweighed by the danger of unfair prejudice. There are cases where evidence of racial bias, though held to be relevant, has been excluded because it was substantially outweighed by the danger of unfair prejudice. *See, e.g., State v. Guthrie,* 194 W.Va. 657, 461 S.E.2d 163 (1995) (danger of unfair prejudice substantially outweighed the probative value of defendant's affinity for Adolf Hitler, his dislike of African–Americans, and his chauvinistic feelings toward women to impeach evidence that defendant was a good, quiet, bible-reading man). On the other hand, in *Kimble v. State,* our Court of Appeals found that where the evidence of defendant's guilt was overwhelming, the probative value of evidence regarding his membership in a racially-biased organization and his racially-charged statement was not substantial-

ly outweighed by the danger of unfair prejudice.

A trial court decision regarding whether any particular evidence violates Evidence Rule 403 will be accorded a great deal of deference on appeal; we review only for an abuse of discretion. *Steward v. State*, 652 N.E.2d 490, 501 (Ind.1995). Our analysis of this evidence suggests no such abuse. Here, we believe the trial court could have assigned moderate weight to the probative value of the evidence of motive. It does not, to be sure, create a strong inference by itself that defendant was motivated to murder out of racial bias. On the other hand, the evidence does suggest more than passive racial basis. We also believe the trial court could have assigned moderate weight to the danger of unfair prejudice. On the one hand, the prosecutor attempted to use the evidence of racial bias to urge the jury to convict, telling the jury that the defendant was the kind of a person who committed murder out of "hatred, prejudice, or just plain disrespect for human life." This certainly was an attempt to use the evidence to do more than simply establish motive. On the other hand, defendant makes no argument that either the composition of this jury nor any information gleaned about it from *voir dire* made it particularly susceptible to act in retaliation for evidence of racial bias. Given that we believe the trial court could have found the probative value and danger of unfair prejudice of this evidence to be of approximately equal weight and that our rule requires that the danger of unfair prejudice substantially outweigh the probative value before evidence must be excluded, we cannot say that the trial court abused its discretion in admitting the evidence here.

## II

Defendant contends that the trial court erred by failing to grant a mistrial after a State's witness twice made reference to the possibility that defendant would face habitual offender charges. The state counters that the defendant was not prejudiced by the statement and that it was within the trial court's discretion to deny the motion for mistrial.

In response to a question about why he had contacted the prosecutor regarding Berryhill's murder, witness Mark Jones stated:

I was concerned that this man was definitely dangerous to society. I felt that he took part in this murder and that he had also stated that if they convicted him of this murder charge for killing this nigger then uh, he would also not only face serious time for this charge but also uh, the habitual offender.

In chambers, the trial court admonished the prosecutor and instructed him to get to the point of Jones's testimony. The State again questioned Jones about the reason he and the defendant were together, and in response, Jones stated:

And he went to his cell and he returned with the information on the IC number and uh, and stated that uh, if he was convicted for killing this nigger that uh, he was going to face serious time for it, plus uh, more than likely he faced the habitual himself.

At this point, defendant moved for a mistrial based on Jones' s second disclosure to the jury that defendant might face habitual offender charges. The court denied the motion. The State then took precautions to elicit only the needed testimony and prevent further mention of the potential habitual offender charges by the witness.

The denial of a mistrial lies within the sound discretion of the trial court, and reversal is required only if defendant demonstrates that he was so prejudiced that he was placed in a position of grave peril to which he should not have been subjected. *Campbell v. State*, 622 N.E.2d 495, 501 (Ind.1993); *Bradford v. State*, 453 N.E.2d 250, 252 (Ind.1983). The gravity of the peril is determined by the probable persuasive effect on the jury's decision. *Roche v. State*, 596 N.E.2d 896, 902 (Ind.1992). A trial judge is in the best position to gauge the surrounding circumstances and the potential impact on the jury when deciding whether a mistrial is appropriate. *Id.*

In *Roche,* a State's witness referred to an exhibit as a "repeat offender" sheet and the defendant moved for a mistrial. The defendant reasoned that such a response notified

the jury that the defendant had been convicted of prior crimes and that the jury would therefore be irrevocably prejudiced against him. The trial court denied the motion and this court affirmed the ruling. This court reasoned that the evidence in the case was not so close that the remark influenced the jury or placed the defendant in a position of grave peril. *Id.*

In *Bradford,* a State's witness testified that he and the defendant had "beat up" another man and the defendant moved for a mistrial. In upholding the denial of the motion for mistrial, this court reasoned that the statement did not clearly inform the jury that the defendant had been convicted of a crime. 453 N.E.2d at 252. Also, the court noted that the statement was not intentionally elicited by the prosecution and was not intended as an evidentiary harpoon. *Id.* This court concluded that the trial court did not err in denying the motion for mistrial in as much as the remark was not solicited and apparently made without any design by the State to harm defendant and because defendant failed to show that he was placed in a position of grave peril.

Similarly, here, the State's witness, Jones, only mentioned the term "habitual offender" in passing, which the trial court could have determined did not clearly indicate to the jury that defendant had previously been convicted of a crime. The trial court could have reasoned that since no clarifying questions were asked nor other use made of the statement, the jury was not even aware of the implications of Jones's statement that defendant faced habitual offender charges. Also, this remark is similar to the comment regarding the "repeat offender" sheet in *Roche,* which this court determined did not necessitate a mistrial in as much as the remark was not solicited and apparently made without any design to harm defendant. The trial court could have concluded that the State did not intend to elicit the remark or create an evidentiary harpoon. Such a conclusion is supported by the State's careful questioning of the witness to avoid any further mention of the habitual offender charges. Finally, the trial court could have concluded that defendant failed to demonstrate that he was placed in a position of grave peril because he did not show the probable persuasive effect Jones's statement may have had on the jury. Defendant even concedes in his brief that it is difficult to assess the impact of Jones's disclosure on the jury. Because the trial court was in the best position to determine the impact of the statement on the jury, we conclude that the trial court did not abuse its discretion in denying defendant's motion for a mistrial.

### Conclusion

Accordingly, defendant's Murder, Robbery with a Deadly Weapon, and Habitual Offender convictions and sentences are affirmed.

SHEPARD, C.J., and DeBRULER, DICKSON and SELBY, JJ., concur.