Nelson Ismael CADIZ, Appellant–
Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 45A03–9504–CR–115.

Court of Appeals of Indiana.

Feb. 20, 1997.

Mark A. Bates, Appellate Public Defender, Crown Point, for Appellant–Defendant.

Pamela Carter, Attorney General, Andrew L. Hedges, Deputy Attorney General, Indianapolis, for Appellant–Plaintiff.

## OPINION

STATON, Judge.

Nelson Cadiz ("Cadiz") appeals his convic-

tion for attempted murder.[1] Cadiz raises three evidentiary issues for review which we restate as:

I. Whether the trial court erred by prohibiting the defense from questioning the victim concerning drug use.

II. Whether the trial court erred by admitting a bag containing a bloody sweater and knife.

III. Whether the trial court erred by permitting the State to question the defendant about his association with a street gang.

We affirm.

The facts most favorable to the verdict reveal that on May 30, 1993, the victim was walking to a party. En route, the victim encountered Cadiz. Cadiz grabbed the victim, and several other men appeared, dragging the victim to a nearby field. After dragging the victim to the field, the men began beating and kicking him. One person hit the victim in the head with a cement block while others jumped up and down on him. At this point, the attackers left.

The victim tried to crawl away, but could not move. Approximately twenty minutes later, Cadiz and another man appeared. Cadiz approached the victim and kicked him in the face. The other man stabbed the victim several times. The victim overheard Cadiz state "We should just finish him off." The following day, the victim was found laying in the field. Cadiz was later arrested and convicted of attempted murder. This appeal ensued.

## I.

### Victim Drug Use

▪ Cadiz' first argument is that the trial court erred when it prohibited the questioning of the victim concerning his drug use. Cadiz argues on appeal that the question should have been permitted since if the vic-

tim had been taking drugs his perception and memory could have been impaired. However, Cadiz failed to offer this argument to the trial court when the State objected to the question.[2] A party waives an issue on appeal by making no mention at trial of the grounds asserted on appeal. *Norton v. State,* 273 Ind. 635, 408 N.E.2d 514, 525 (1980) (changing grounds of objection on appeal waives issue); *Joy v. State,* 460 N.E.2d 551, 562 (Ind.Ct.App.1984) ("By objecting on grounds that a question was leading ... and arguing on appeal that it was inflammatory, presents no issue for appellate review."). Accordingly, Cadiz has waived this issue by not presenting any argument in support of the admissibility of this evidence at trial.

## II.

### Admissibility of Sweater and Knife

▪ Also admitted into evidence was a bloody sweater and knife. Cadiz claims admission of this evidence violated Indiana Evidence Rule 403. Evid.R. 403 states, in relevant part, that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice...." A trial court's decision regarding whether evidence violates Rule 403 is accorded a great deal of deference on appeal, and we review only for an abuse of discretion. *Tompkins v. State,* 669 N.E.2d 394, 398 (Ind.1996). The "rule requires that the danger of unfair prejudice *substantially* outweigh the probative value before evidence must be excluded...." *Id.* (emphasis added).

Approximately six blocks from the site of the attack, Officer Legg discovered a bag which contained a bloody sweater and knife. The bag was discovered near Cadiz' father's house. A forensic serologist tested the blood on the sweater and concluded that approximately three percent of the Hispanic population has blood consistent with the blood found on the sweater.[3] The serologist also

---

1. IND.CODE § 35–42–1–1 (1993); IND.CODE § 35–41–5–1 (1993).

2. In fact, Cadiz presented no argument whatsoever to the trial court in support of the admissibility of this evidence.

3. The victim is Hispanic.

determined that the victim's blood was consistent with blood on the sweater. Regarding blood on the knife, the serologist concluded that 53% of the Hispanic population could have contributed the blood found on the knife and that the victim's blood was also consistent with the blood found on the knife.

According to Cadiz, this evidence was unfairly prejudicial since there is a large Hispanic population in the neighborhood and there was no direct testimony identifying the sweater or knife as being involved in the assault. However, the blood on the sweater could have been contributed by only three percent of the Hispanic population, and the victim fell within this three percent. Thus, we conclude the probative value of this evidence was high. The percentages are less favorable for the knife, but we note the knife was found in the same bag as the sweater. Cadiz would have us believe that a highly probative piece of evidence (the sweater) inadvertently became associated in the same bag as a piece of evidence with a more tenuous relationship to the victim (the knife). Without denying the possibility, we conclude that the possibility, and, hence, the prejudicial effect, is quite low. Thus, we conclude the trial court did not abuse its discretion when it admitted the bloody sweater and knife.

### III.

#### Street Gang Association

■ Cadiz finally contends that the trial court erred by permitting the State to cross-examine him regarding his association with a member of a street gang. Cadiz was questioned about his relationship with Bernardo Lugo, a friend of Cadiz and member of a street gang. In addition to this questioning, there was testimony from a police officer that he felt the attack was gang related. The victim also testified that members of a gang were involved and that, during the attack, Cadiz stated "This is for my brothers." According to the victim, Cadiz' statement was a reference to gang activity or participation. Cadiz only argues that the cross-examination was improper and does not challenge the other gang related evidence.

Cadiz contends that cross-examining him concerning his associations with gang members was prohibited by Indiana Rule of Evidence 404(b) and was unfairly prejudicial. According to Cadiz, this evidence was offered for the purpose of inflaming the jury and encouraging a guilty verdict via his association with gang members. Rule 404(b) provides that "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." Ind. Evidence Rule 404(b). Such evidence may be admitted for other purposes such as proof of motive, preparation, plan, knowledge, identity or absence of mistake. Evid.R. 404(b). While primarily applied in the context of prior criminal acts, the rule has been given a broad interpretation and has been held to apply to any conduct which may bear adversely on the jury's judgment of a defendant's character. See Kimble v. State, 659 N.E.2d 182, 184 n. 5 (Ind.Ct.App.1996), trans. denied. Although not presented as such on appeal, a proper resolution of this issue requires an analysis into whether the challenged evidence was admissible to prove motive.

■ It is well settled that evidence of motive is always relevant in the proof of a crime. Tompkins, supra, at 397; Carson v. State, 659 N.E.2d 216, 218 (Ind.Ct.App.1995). The admission of evidence creating an inference of motive is within the discretion of the trial court. Tompkins, supra. We will disturb its ruling only upon a showing of abuse of that discretion. Drake v. State, 655 N.E.2d 574, 575 (Ind.Ct.App.1995) (citing Kremer v. State, 514 N.E.2d 1068, 1073 (Ind. 1987), reh. denied). However, courts must be cautious that the limited admissibility of 404(b) exceptions do not swallow the general rule. See Wickizer v. State, 626 N.E.2d 795, 797 (Ind.1993) (discussing evidence of intent); Carson, supra (discussing evidence of motive).

In Kimble, the State introduced evidence of the defendant's racial bias and membership in a racially biased group, the White Brotherhood. Kimble, supra, at 185. The evidence was offered to prove motive in a robbery and felony murder trial where the victim was a black prostitute. This court

found no error in the admission of the evidence since "[t]his evidence goes directly to Kimble's motive in committing the crime...." *Id.* Similarly, in *Tompkins,* the State was permitted to introduce evidence of the defendant's racial bias in a murder trial. Again, this court concluded the trial court did not abuse its discretion since the "evidence of defendant's racial bias was relevant as creating an inference of defendant's motive for the murder." *Tompkins, supra.* Also factually similar to this case is *United States v. Lloyd,* 71 F.3d 1256 (7th Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 2511, 135 L.Ed.2d 200. In *Lloyd,* evidence of the defendant's membership in a street gang was admissible under Federal Rule of Evidence 404(b) to show, *inter alia,* the defendant's motive to possess a firearm. *Id.* at 1266. The Seventh Circuit concluded that the evidence was relevant since the defendant's membership in a street gang made possession of a firearm more probable than not. *Id.* at 1264.

Given that evidence of motive is relevant in the proof of a crime, *Tompkins, supra,* and that evidence of participation in organizations such as racially biased groups is relevant in proving motive, *Kimble, supra,* we conclude evidence of Cadiz' association with a gang member was relevant and admissible under Rule 404(b) to prove motive for the attack.

■ However, our inquiry does not end here. Even if relevant under 404(b), the evidence may nevertheless be excluded if its probative value is substantially outweighed by its prejudicial effect. Evid.R. 403; *Forrest v. State,* 655 N.E.2d 584, 587 (Ind.Ct. App.1995), *trans. denied.* Turning to the facts of this case, the victim and Cadiz were friends who lived in the same neighborhood and had known each other since 1985. In 1985, Cadiz and the victim would socialize together approximately four days out of a week. Cadiz testified that there was no animosity between the two. In fact, when the victim initially encountered Cadiz before the attack, Cadiz greeted him in a friendly manner asking how he was doing and where he was going. There was no disagreement or argument between the two on the day of the attack. Thus, evidence of Cadiz' gang relationships was very probative in that it pro-

vided a motive for an otherwise completely senseless act of violence. As to the prejudicial effect of this evidence, we acknowledge the possibility that gang related evidence can be prejudicial. However, the inquiry is not whether evidence is prejudicial; rather, the inquiry is whether the evidence is unfairly prejudicial since all relevant evidence is inherently prejudicial. In this case, we cannot conclude that the prejudicial impact of this evidence outweighed its probative value in light of the victim's and Cadiz' past amicable relationship. *See Tompkins, supra,* at 397 (404(b) evidence of racial bias as motive not unfairly prejudicial); *Kimble, supra* (404(b) evidence of participation in racially biased group as motive not unfairly prejudicial); *Lloyd, supra* (404(b) evidence of gang activity as motive not unfairly prejudicial). Accordingly, we conclude the trial court did not abuse its discretion when it permitted cross-examination of Cadiz regarding his relationship with a known street gang member.

Affirmed.

HOFFMAN and CHEZEM, JJ., concur.