Daniel H. RAESS, M.D., Appellant–Defendant,

v.

Joseph E. DOESCHER, Appellee–Plaintiff.

No. 49A02–0506–CV–490.

Court of Appeals of Indiana.

Dec. 8, 2006.

Mary H. Watts, Karl L. Mulvaney, Kelly R. Eskew, Bingham McHale LLP, Indianapolis, IN, Attorneys for Appellant.

Kevin W. Betz, Sandra L. Blevins, Indianapolis, IN, Attorneys for Appellee.

## OPINION

HOFFMAN, Senior Judge.

Defendant–Appellant Daniel H. Raess, M.D. ("Raess") appeals from a jury verdict and damage award in favor of Plaintiff–Appellee Joseph E. Doescher ("Doescher"). We reverse and remand.

The following issue is dispositive: whether the trial court committed reversible error in allowing a witness to label Raess a "workplace bully."

On October 25, 2001, Doescher, who was acting as a perfusionist in an open-heart surgery being performed by Dr. Beth Ash-

worth ("Ashworth") at St. Francis Hospital ("the Hospital") in Beech Grove, Indiana, left during the surgery to attend to personal business. As a perfusionist, Doescher operated the "heart/lung" machine that kept the patient alive during the surgery. Prior to the beginning of the procedure, Doescher had arranged for Jennifer Lee, another perfusionist, to fill in for him after his departure. Although it was customary for a perfusionist to give notice of an absence to the physician conducting a surgical procedure, Hospital policy did not require such notice. Doescher did not give notice to Ashworth or to any other doctor.

The combination of Doescher's absence, Lee's commitment as Doescher's replacement, and the involvement of the third perfusionist, Joe Borondy ("Borondy"), in a scheduled surgery left the Hospital with no available perfusionists for a short amount of time. Accordingly, Raess, who is a heart surgeon, was not immediately able to conduct an emergency heart surgery. Raess became angry and yelled at both Lee and Borondy.

The following day Borondy told Doescher about Raess' outburst. Doescher testified that he then resigned his Chief Perfusionist position as a form of "protest." However, Doescher continued working as a staff perfusionist at the Hospital.

On November 2, 2001, Doescher acted as a perfusionist in a heart surgery performed by Raess. Afterwards, Raess approached Doescher to talk about "coverage issues" such as the one caused by Doescher's previous absence. Doescher informed Raess that he was no longer Chief Perfusionist and that coverage issues were not his concern. The two men separated without further discussion.

Later in the day, Doescher and Raess were together in the "pump room" located between the operating rooms in the Hospital's open-heart surgery area. An argument ensued and Raess became angry, causing his body to stiffen, his face to turn red, and his jugular vein to extend. Raess walked toward Doescher and exited out the door close to Doescher. At trial, Doescher testified that Raess walked toward him in a manner that caused Doescher to think that Raess was going to "smack the s* * * out of me." Transcript at 484. Doescher also testified that although Raess' balled fists were at his side, Raess' demeanor and purposeful walk caused Doescher to back up against the wall and raise his hands in defense. Doescher then declared an end to the conversation, and Raess walked out after yelling, "You're over. You're history. You're finished." Doescher further testified that he felt assaulted because of "the advancement, the look in [Raess'] eye, [and] his body positioning." Transcript at 492.

After the November 2, 2001 incident, Doescher testified that he became depressed and anxious, exhibited heightened anxiety, developed sleep problems, and experienced loss of appetite. Doescher further testified that he lost his confidence and did not return to his position as a staff perfusionist. Doescher presented medical experts who testified as to Doescher's mental and physical health.

On June 26, 2002, Doescher filed a complaint against Raess for assault, intentional infliction of emotional distress, and intentional interference with his employment relationship. The trial court entered summary judgment in Raess' favor on the intentional interference with an employment relationship claim, and the suit went to trial on the remaining issues. Prior to the jury trial, Raess filed a motion in limine seeking to preclude any witness, including any expert witness, from giving testimony depicting Raess as a "workplace bully." Raess also filed a motion to exclude the testimony of Doescher's "work-

place bully" expert, Gary Namie ("Namie"). The trial court ruled that Namie could testify that Raess was a workplace bully as to Doescher, but not "against the world." Transcript at 165. Over Raess' objection, Namie testified that the November 2, 2001 altercation was an "episode of workplace bullying" and that Raess is "a workplace abuser ... a person who subjected [Doescher] to an abusive work environment." Transcript at 409; 413–14. The jury found for Raess on the intentional infliction of emotional distress claim and for Doescher on the assault claim. It awarded damages of $325,000.

Raess contends that the trial court erred in allowing Namie to opine that he was a workplace bully. Raess argues that the trial court erred in (1) allowing Namie's opinion testimony pursuant to Indiana Evidence Rule 702; (2) ordering an ineffective "limitation" on Namie's testimony; and (3) refusing to give Raess' tendered jury instruction. We address these arguments below.

■ The admissibility of an expert's testimony is governed by Evid. R. 702. The determination of the admissibility of expert testimony is a matter within the sound discretion of the trial court, and we will reverse only for an abuse of that discretion. *Lytle v. Ford Motor Co.*, 696 N.E.2d 465, 469 (Ind.Ct.App.1998) *trans. denied.* In weighing the admissibility of an expert's testimony, the trial court must determine that the proponent of the testimony has provided the court with "enough information to proceed with a reasonable amount of confidence that the principles used to form the opinion are reliable." *Doe v. Shults–Lewis Child and Family Services, Inc.*, 718 N.E.2d 738, 751 (Ind. 1999). Admission of testimony pursuant to Evidence Rule 702 is subject to the limitations of Evidence Rule 403, in that such testimony is admissible only if its proba-

tive value is not substantially outweighed by the danger of unfair prejudice, confusion of issues, or misleading the jury. *See Hall v. State*, 796 N.E.2d 388, 399 (Ind.Ct. App.2003) *trans. denied.*

■ A trial court's decision under Evid.R. 403 is accorded a great deal of deference on appeal, and we review only for an abuse of discretion. *Cadiz v. State*, 683 N.E.2d 597, 598 (Ind.Ct.App.1997). It is only when the evidence is "merely marginally relevant" that the trial court has discretion to exclude it by balancing the probative value against prejudicial impact. *Stamper v. Hyundai Motor Co.*, 699 N.E.2d 678, 687 (Ind.Ct.App.1998), *trans. denied.* The phrase "unfair prejudice," as used in Evid.R. 403, has been "described rather than defined" by case law. *See* Robert L. Miller, Jr., *Indiana Practice: Courtroom Handbook on Indiana Evidence* § 403.102, p. 284 (2nd ed). " 'Unfair prejudice' addresses the way in which the jury is expected to respond to evidence; it looks to the capacity of the evidence to persuade by illegitimate means, or to the tendency of the evidence 'to suggest decision on an improper basis, commonly but not necessarily an emotional one....' " *Id.* at 284–85; *see Nichols v. American National Insurance Co.*, 154 F.3d 875, 885 (8th Cir.) (holding that informing the jury of a party's abortion presented the danger of provoking a "fierce emotional reaction"). The rule is applied to exclude evidence when "the impact of the evidence is beyond its legitimate persuasive effect." *Id.* at 285–86.

Assuming, without deciding, that the trial court correctly determined that Doescher presented evidence sufficient to establish Namie's opinion was based on reliable scientific principles, we still must address the issue of whether the probative value of the testimony is substantially outweighed by the danger of unfair prejudice, confu-

sion of issues, and/or misleading the jury. Here, the question of whether Raess is a "workplace bully," as it pertains to the ultimate issue of whether Raess committed assault or intentional infliction of emotional distress, is relevant only to the extent that it bears on Doescher's perceptions at the time of his argument with Raess. Given Doescher's admission that he had no prior fear of Raess, the probative value of the Namie's testimony is nil. On the other hand, Namie's testimony labels Raess as a bad person, a "workplace bully" who commits assault. Even as limited by the trial court, Namie's testimony allowed the jury to infer that Raess committed assault because that is what "bullies" do.

The confusion caused by Namie's testimony is illustrated by the emphasis placed upon the testimony by Doescher's counsel. Trial counsel referred to Raess as a "bully" in his opening statement, and in closing argument he referred to "bullying" numerous times. Counsel concluded his rebuttal closing argument by stating, "We ask for a verdict in favor of Joe Doescher. And, yes, *that's a verdict against workplace bullying* and *against the workplace bullying incident.*" Transcript at 1290 (emphasis supplied). In this case, where (1) the "workplace bullying" evidence had no probative value, (2) the evidence of assault was thin, (3) the verdict was almost completely dependent upon whom the jury chose to believe, and (4) trial counsel asked for a verdict on "workplace bullying," the label established by Namie's testimony results in unfair prejudice to Raess by confusing and misleading the jury as to the issue.[1]

■■■ As we noted above, the trial court refused Raess' tendered instruction that advised the jury that "workplace bullying" is not a cause of action and that the jury's verdict should be based upon the elements of the alleged claims, not on whether Raess was a "workplace bully."[2] In reviewing a trial court's refusal to give a tendered instruction, this court engages in a three-part inquiry: (1) whether the tendered instruction is a correct statement of the law; (2) whether there is evidence in the record to support the instruction; and (3) whether the substance of the instruction is covered by other instructions given by the court. *Brooks v. Friedman*, 769 N.E.2d 696, 699 (Ind.Ct.App.2002), *trans. denied.*

Doescher claims that Raess has not established the third part of the inquiry. He argues that it was readily apparent to the jury that "workplace bullying" was not a recognized cause of action and that, therefore, the trial court's instructions pertaining to assault and intentional infliction of emotional distress were sufficient. Under

---

1. Doescher suggests that the admission of Namie's testimony was harmless error because another witness, David Hartman, a psychologist, also testified about workplace bullying. We note that Hartman's testimony was directed toward the validity and extent of Doescher's psychic injuries, not the issue of whether an assault actually occurred. Furthermore, Hartman did not purport to be an expert on the subject of workplace bullying and did not specifically characterize Raess as a workplace bully. Given the differences in emphasis, we cannot say that Hartman's testimony rendered harmless the admission of Namie's earlier testimony.

2. The tendered instruction stated:

   "Workplace bullying" is not an issue in this matter, nor is there any basis in the law for a claim of "workplace bullying."
   In other words, you are not to determine whether or not the Defendant, Daniel Raess, was a "workplace bully." The issues are as I have instructed you: whether the Defendant assaulted the Plaintiff, Joseph Doescher on November 2, 2001, and whether that assault constituted intentional infliction of emotional distress.
   Appellant's App. at 501.

the facts of this case, we must disagree. Given the confusion engendered by the admission of Namie's testimony and by trial counsel's references to and plea for a "workplace bullying" verdict, we conclude that the substance of the tendered instruction was not covered by the trial court's instructions. Accordingly, the trial court abused its discretion in refusing to give the instruction.

Because the probative value of Namie's testimony was substantially outweighed by the unfair prejudice to Raess, we must reverse.

Reversed and remanded for further proceedings.

DARDEN, J., and RILEY, J., concur.