## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED
Jul 02 2015, 9:49 am
CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Robert B. Turner
Lee & Fairman, LLP
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Jodi Kathryn Stein
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

David Butler,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

July 2, 2015

Court of Appeals Case No.
49A05-1309-CR-431

Appeal from the Marion Superior Court.
The Honorable Kurt Eisgruber, Judge.
Cause No. 49G01-1104-FC-30191

**Baker, Judge.**

[1] David Butler appeals his convictions for two counts of Robbery,[1] a class C felony, and two counts of Official Misconduct,[2] a class D felony. Butler argues that the trial court erroneously admitted evidence of a civil monetary judgment against him and subsequent garnishment of his wages. He also argues that the evidence is insufficient to support the robbery convictions. Finding that the evidence of the civil judgment was relevant to Butler's motive and not unfairly prejudicial, and that the evidence supporting the robbery convictions was sufficient, we affirm.

## Facts

[2] In 2010, then-Officer David Butler was a twenty-year veteran of the Indianapolis Metropolitan Police Department (IMPD). On September 7, 2010, a judgment in small claims court was entered against Butler in the amount of $4,905. At that time, Butler was living paycheck to paycheck and working security jobs to make ends meet. In November 2010, Butler's wages were garnished as a result of the civil judgment against him, which then totaled $5,031.78 with interest.

[3] On September 27, 2010, Butler was on duty and was driving a marked police vehicle. At about 6:45 p.m., Butler initiated a traffic stop just north of 34th

---

[1] Ind. Code § 35-42-5-1.

[2] Ind. Code § 35-44-1-2. This statute has been amended and recodified and can now be found at Indiana Code section 35-44.1-1-1. The amendment and recodification have an effective date of July 1, 2014, so we have cited to the statute in place at the time Butler committed these offenses.

Street and High School Road. The driver, later identified as Andrez Salasar, pulled into a bank parking lot, and Butler followed.

[4] When an IMPD officer initiates a traffic stop, he or she is required to "mark out," meaning that the officer must inform control, either by radio or laptop, that a traffic stop has been initiated. Tr. p. 41. It was a "very clear" directive to mark out at traffic stops to ensure officer safety. *Id.* at 152-54, 159-60, 171.

[5] After Butler had initiated the traffic stop of Salasar, Officer Kollin Anslow pulled in and stopped parallel to Butler's vehicle to serve as backup. Officer Anslow discovered that Butler had not marked out, so Officer Anslow called control to communicate that the stop was in progress. Butler approached Salasar and asked him for his driver's license and vehicle registration. Salasar is from Oaxaca, Mexico, and had been in the United States illegally for about five years. Salasar told Butler that he did not have a driver's license but did have identification, pulling his wallet out of his back pocket to retrieve it. Butler grabbed the wallet and kept it.

[6] Officer Brian Finley also came to serve as backup to Butler. Butler asked Officer Anslow to pat-down Salasar and asked Officer Finley to run Salasar's identification. While Officer Anslow was conducting the pat-down and Officer Finley was in his vehicle running the identification, Butler leaned inside Salasar's vehicle at the driver's side door. Officer Finley never saw Salasar's wallet, which held $4,000 in cash from several paychecks that Salasar had just cashed.

[7] The identification check revealed no driving history or open warrants for Salasar. Butler told Salasar that he was driving without a license and that if Butler saw him driving again, he would arrest him. The three officers left the scene. Salasar returned to his vehicle and found his wallet under the driver's seat. Upon arriving home, he discovered that $2,000 was missing from his wallet. Salasar was unsure what to do, so he asked a neighbor, who called 911 and reported the incident. IMPD began an internal affairs investigation as a result of Salasar's report.

[8] During the early evening hours of January 12, 2011, Butler pulled into a Marathon gas station at 34th and Moeller behind a driver later identified as Emiliano Vasquez. Butler initiated a traffic stop of Vasquez, who, like Salasar, is from Oaxaca, Mexico, and has been in the United States illegally for approximately twelve years. Butler did not mark out. He approached Vasquez and asked for his driver's license and registration. Vasquez removed his wallet from his back pocket and pulled out his Mexican Consulate card. As Vasquez started to put his wallet into his back pocket, Butler told him to leave the wallet on the driver's seat. Butler then removed Vasquez from the vehicle, ordered him to stand at the back of the vehicle and not to move, and informed him that he was going to inspect the vehicle. Butler then searched the vehicle, remaining at the driver's side door for over a minute. Butler approached Vasquez, returned his identification, and told him that if he stopped him again, he would be arrested. Butler acted angry, and Vasquez was afraid. Vasquez returned to his vehicle and found his wallet on the driver's seat. He later discovered that

$700 was missing from his wallet. Vasquez called a friend, who encouraged him to report the incident. He returned to the gas station and found another IMPD officer, to whom he reported the incident.

At the request of a sergeant, Officer Finley drove to the Marathon gas station to watch the surveillance video of the Vasquez incident. While Officer Finley was watching the video in the back room of the gas station, Butler arrived. Butler tried to lure Officer Finley away from the video by telling him that his vehicle was unlocked and that the dome light was on; Officer Finley refused to leave. The video showed the traffic stop, and Officer Finley had a "bad feeling" and thought there was a good possibility that Butler was the officer in the video. Tr. p. 314-15. Later, Butler emphatically and repeatedly denied having conducted the traffic stop of Vasquez. Eventually, in April 2011, Butler gave a recorded statement as part of IMPD's criminal investigation into the Salasar and Vasquez incidents. Butler continued to deny being the officer who stopped Vasquez until the very end of the interview, when he was confronted by the fact that the IMPD vehicle in the video was his vehicle. Butler then admitted that he had stopped Vasquez and did not mark out, but denied that he took any money from Vasquez's wallet.

On April 29, 2011, and as later amended on September 9, 2011, the State charged Butler with the following offenses committed against Vasquez, Salasar, and three other alleged victims:

- Count I: class C felony robbery (Vasquez)
- Count II: class D felony official misconduct (Vasquez)

- Count III:  class C felony robbery (Salasar)
- Count IV:  class D felony official misconduct (Salasar)
- Count V:  class C felony robbery (Z. Melecio)
- Count VI:  class D felony official misconduct (Z. Melecio)
- Count VII:  class C felony robbery (E. Prieto)
- Count VIII:  class D felony official misconduct (E. Prieto)
- Count IX:  class D felony theft (R. Jolley)
- Count X:  class D felony official misconduct (R. Jolley)

Counts IX and X related to Jolley were severed from the remaining counts, and following a mistrial in June 2012, the State dismissed Counts V and VI related to Melecio.

[11]  Butler's second jury trial took place in February 2013.  The jury found him guilty of the counts relating to Vasquez and Salasar, and not guilty of the counts relating to Prieto.  The trial court sentenced Butler to four years for each class C felony robbery conviction and to 545 days for each class D felony official misconduct conviction, with the robbery sentences to be served consecutively and the misconduct sentences to be served concurrently.  Thus, Butler's aggregate sentence was eight years, with four years executed, four years suspended, and one year of probation.  In June 2013, Butler pleaded guilty to the two severed charges related to Jolley.  The trial court sentenced Butler to one year for theft and one year for official misconduct, to be served consecutively to the sentences imposed for the Vasquez/Salasar convictions. Butler now appeals the Vasquez/Salasar convictions.

# Discussion and Decision

# I. Admission of Evidence

[12] First, Butler contends that the trial court erroneously admitted evidence of the civil monetary judgment against him and subsequent wage garnishment. The decision to admit evidence is within the trial court's sound discretion, and an abuse of discretion occurs only when the trial court's decision is clearly against the logic and effect of the facts and circumstances before it. *Lindsey v. State*, 916 N.E.2d 230, 238 (Ind. Ct. App. 2009).

[13] Butler seems to be arguing that this evidence is unfairly prejudicial and should therefore have been excluded. Initially, we note that Butler cites to no legal authority in making this argument and that he appears to be raising this issue for the first time on appeal. He has, consequently, waived the argument.

[14] Waiver notwithstanding, we note that in general, relevant evidence is admissible. Ind. Evidence Rule 402. The trial court may, however, exclude relevant evidence if its probative value is substantially outweighed by a danger of, among other things, unfair prejudice. Evid. R. 403.

[15] Evidence of the judgment and subsequent wage garnishment were relevant in this case because they established a motive for Butler's actions. Evidence of motive is relevant in the proof of a crime. *E.g.*, *Tompkins v. State*, 669 N.E.2d 394, 397 (Ind. 1996) (also emphasizing that "the admission of evidence having a tendency to create an inference of motive is within the discretion of the trial court"). Although Butler argues that this evidence caused "extreme prejudice"

to him, he does not explain why that is the case. Appellant's Br. p. 26. While this evidence may have been prejudicial to Butler, he has not explained, and we cannot discern, why the prejudice was *unfair*. Moreover, we agree with the State that because "very few people today have no debt or financial struggles, an average juror would not have attached undue prejudice to these financial documents." Appellee's Br. p. 24. Consequently, we find no error in the trial court's decision to admit this evidence.[3]

## II. Sufficiency

Next, Butler contends that there is insufficient evidence supporting the two class C felony robbery convictions. When we review a challenge to the sufficiency of the evidence, we neither reweigh the evidence nor assess witness credibility. *McClellan v. State*, 13 N.E.3d 546, 548 (Ind. Ct. App. 2014), *trans. denied*. Instead, we consider only the probative evidence supporting the conviction and the reasonable inferences to be drawn therefrom. *Id.* If there is substantial evidence of probative value from which a reasonable factfinder could have drawn the conclusion that the defendant was guilty beyond a reasonable doubt, then the verdict will not be disturbed. *Id.*

To convict Butler of class C felony robbery, the State was required to prove beyond a reasonable doubt that he knowingly or intentionally took property

---

[3] Additionally, we note that even if we had found error, we would have found it harmless, given the wealth of other, independent evidence supporting Butler's convictions.

from Salasar and Vasquez by threatening the use of force on Salasar and Vasquez or by putting Salasar and Vasquez in fear.  I.C. § 35-42-5-1.[4]  Butler argues that there is insufficient evidence establishing that he threatened the use of force on Salasar and Vasquez or that he put them in fear.

[18]     With respect to Vasquez, we note that Vasquez testified that he was, in fact, afraid.  Tr. p. 194.  His testimony alone is sufficient to support the jurors' conclusion that Butler took Vasquez's property by putting him in fear.

[19]     With respect to Salasar, we observe that the offense of robbery does not require that a certain amount or type of force be proved to establish the commission of that offense.  *Maul v. State*, 467 N.E.2d 1197, 1199 (Ind. 1984).  "The nature of the threatened force is not material in the definition of robbery as a Class C felony and any threat of force, conveyed by word or gesture will suffice."  *Id.* at 1199-1200.

[20]     In this case, Butler, a uniformed IMPD officer on duty and driving a fully marked police vehicle, initiated a traffic stop of Salasar, who pulled over and submitted to the officer's authority.  Butler then ordered Salasar to exit his vehicle.  Butler "grabbed" Salasar's wallet and retained it while Officer Anslow conducted a pat-down of Salasar.  Tr. p. 91, 134.

---

[4] This statute, along with much of the Indiana criminal code, was amended by the General Assembly in 2014, with an effective date of July 1, 2014.  We refer to and apply the version of the statute in place at the time Butler committed these offenses.

[21] We agree with the State that Butler "did not have to violently remove the money from Salasar and Vasquez, as his use of force against these two men came from his act of seizing their persons and removing them from their vehicles." Appellee's Br. p. 21. Here, under the color of law, a fully armed police officer seized the persons of two illegal immigrants, grabbing one victim's wallet and ordering the other victim to place his wallet in his vehicle and step to the rear of the vehicle. We find that these actions easily amount to a threat to use force and that a reasonable juror could readily infer that Butler's actions put Salasar in fear. *See Maul*, 467 N.E.2d at 1200 (holding that the victim need not testify that he/she was put in fear; instead, there need only be evidence from which the jury can infer that the victim was put in fear). Therefore, we find the evidence sufficient to support these convictions.

[22] Finally, Butler emphasizes certain inconsistencies between the testimony of Vasquez and Salasar at trial compared to their police statements and deposition testimony. This amounts to a request that we step into the shoes of the

factfinder, reweigh the evidence, and reassess witness credibility. We decline

this request, and again find the evidence sufficient to support the convictions.[5]

May, J., and Mathias, J., concur.

---

[5] Butler also seems to argue that there was an unconstitutional variance between what was alleged in the probable cause affidavit and the evidence that was actually presented at trial. He neither cites to any legal authority nor explains what, precisely, the alleged differences were. Therefore, we are unable to address this argument. We note our agreement with the State that "a conviction is based upon evidence introduced at trial and not information provided in a probable cause affidavit, which is the means by which to file charges against a defendant." Appellee's Br. p. 17. We see no reason that a variance between information contained in a probable cause affidavit and evidence presented at trial would violate a defendant's due process rights.